FILED
BILLINGS DIV.
2011 AUG 26 AM 11 40
PATRICK E. DUFFY, CLERK
BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

UNITED STATES OF AMERICA,     Cause No. CR 10-45-BLG-RFC

Plaintiff/Respondent,

vs.

ERIC JAMES SCHULTZ,

Defendant/Movant.

ORDER DENYING RULE 59(e)
MOTION AND DENYING
CERTIFICATE OF APPEALABILITY

---

This case again comes before the Court, on this occasion, on Defendant/Movant Eric Schultz's motion under Fed. R. Civ. P. 59(e) to alter or amend the judgment denying his motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Schultz is a federal prisoner proceeding pro se.

Schultz continues to assert that he believed in the investment scheme he recommended to his investors. He also continues to pursue the theory that the United States prosecuted him under the wrong statute and, if he had been charged with a different crime, he would have been innocent of it.

Schultz's protestations of his actual innocence are not relevant to the charges of which he was convicted. The basis of the prosecution was not the high-yield investment scheme. Schultz represented that he would invest his victims' money in

ORDER / PAGE 1

that scheme when he did not intend to do so and in fact used their money for other purposes. He was convicted of wire fraud and money laundering. Judgment (doc. 28) at 1.

If the Court was previously wrong to believe that Schultz spoke specific, investment-inducing words to his investors, that is because Schultz argued, in the brief in support of his § 2255 motion, that the parol evidence rule would preclude his investors from testifying about anything he said to them. Br. (doc. 49) at 12, *quoted in* Order Denying § 2255 Mot. (doc. 51) at 7. The point, however, is that Schultz represented to investors that he would invest their money, when he had no intention of doing so and when he in fact did not do so. If the investors' understanding that Schultz would invest their money came only from the legally absurd pseudo-contracts he presented to them, he nonetheless understood what the investors understood, he knew their understanding was wrong, and he desired that it should be wrong because otherwise they would not give him their money. He said exactly that:

> Schultz: I had faith that he [M.M.] would perform on my investment, my initial investment with him; therefore, I could perform for the people that I was –
>
> The Court:[1] So you thought you were going to make enough money with your investment that you would be able to pay these other people?

---

[1] United States Magistrate Judge Carolyn S. Ostby.

Schultz: Yes.

The Court: So you did not do what you told them you would do, and that is invest their money.

Schultz: That is correct. So then when the funds didn't come in – well, our timelines had elapsed with my contracts. And that was when I started to realize that – as it states – that the other programs was a failure.
And basically, therein lies – is that these people placed their trust in me, and they understood that I was going to put the money in with the M.M. program, which was my emphasis. And I did not. I thought I was safe. And I made a huge mistake. And that's why we're here today.

The Court: So with respect to the first element . . . you acted with specific intent to defraud and to obtain money by means of false and fraudulent pretenses, representations, and promises, and . . . you made up a scheme or plan to defraud. Is that what you're telling me? I mean, was it your specific intent to defraud, to obtain money by false and fraudulent pretenses?

Schultz: My intent – I believe I'm responsible because I – they believed in the program, and that's how I obtained the funds. And the way that I obtained the funds was by them believing and understanding that the funds were going to be directly transmitted to M.M.'s program. And I take responsibility because they were not.

The Court: And at the time that you were telling them this, did you know that you were not going to deposit them with M.M.?

Schultz: Yes, I did.

The Court: So you did have a specific intent, then, to get their money

|          | by means of false pretenses because you told them things that you didn't intend to perform on; is that right? |
|---|---|
| Schultz: | I knew that I was not going to forward the funds to M.M., so, yes, it was a false intention. May I say something? |
| The Court: | Yeah. |
| Schultz: | I am working with an attorney in Carolina that – me and ten other people who were in my position against M.M. and his firm. So I'm doing everything I can to achieve my number one goal, which is to help repair the damage I've done to not only my joint venture partners, but my family and friends and everyone involved. |
| The Court: | And I understand that – you understand that the reason I'm asking you these questions is you've been charged with a serious crime here. And I need to know that there's a factual basis for the pleas. And if you're telling me that you didn't have any intent to defraud and that you didn't proceed under any false pretenses, but you were duped by someone else, then I don't know that there's a factual basis for the plea.<br>But if you're telling me that you got money from these people, telling them things that weren't true, knowing at the time they weren't true, and you didn't intend to perform, then that probably does satisfy the element. Is that, in fact, the case? |
| Schultz: | As I stated, I believe my responsibility of wrongdoing is I got them to trust me that I was going to manage their funds and do a certain thing with it, and I did not. And therefore, those funds came into my company, where I could possibly perform other things. |
| The Court: | And when you were telling them this so that they trusted you, you were telling them things you knew weren't true; |

|  | is that right? |
|---|---|
| Schultz: | I knew I wasn't going to forward their money. And I knew that they understood, or probably understood, that I was going to take their certain amount of money and send that certain amount of money down the road. |
| The Court: | Right. So is the answer to my question yes, that you got money from them by telling them things that weren't true? |
| Schultz: | Yes. |
| The Court: | And that you knew weren't true at the time? |
| Schultz: | I knew that was not true that I was going to forward their money, yes. |
| The Court: | And this was material because they wouldn't depart with their money had you been truthful with them? |
| Schultz: | Had I told them what I was going to use their funds for, partially my own personal things and intermediaries involved, they probably would not have forwarded their funds. Or they would have had better education about the situation and a better decision than I allowed them. |
| The Court: | So you agree, then, that your statements were material in getting them to part with their money? |
| Schultz: | Yes, they were. |

Change of Plea Tr. (doc. 44) at 28:24-32:19, *cited in* Order Denying § 2255 Motion (doc. 51) at 2.

I have reviewed all of Schultz's submissions to date. They do not contradict

or otherwise bring into question Schultz's own "[s]olemn declarations in open court," *Blackledge v. Allison*, 431 U.S. 63, 74 (1977), which were clearly based on his own personal knowledge of the facts underlying his case. Not counsel's advice – Schultz's own, personal knowledge. Therefore, Schultz's repeated claims that he is "actually innocent" are specious.

That does not mean, of course, that Schultz's § 2255 motion must be devoid of *legal* merit. Counsel's obligation is to advise his client as to the likelihood the prosecution can prove guilt beyond a reasonable doubt at a fair and constitutional trial, regardless of the client's actual innocence or actual guilt. The prosecution would not have been able to use Schultz's admissions if he had gone to trial. But his legal claims, too, are specious. Precisely because he argues that he operated a legitimate investment enterprise, his failure to invest his victims' money was fraudulent. A reasonable person could not construe the "contracts" on which he relies, Exs. 530, 531, 532 (docs. 49-2 at 10-19), as anything other than (a) promises to invest with fiduciary care, or (b) hooey. Because Schultz in fact did not invest his victims' funds, there was no possibility he would be acquitted. Counsel could not have been ineffective for telling him that.

All of Schultz's claims, including his allegations relating to sentencing, depend on his theory that his "contracts" and his business entity were valid and in compliance

with the regulations he believes applicable. His entity, however, was no one other than himself, and compliance with regulations does not preclude lying to investors.

The § 2255 motion has been decided. It is time for Schultz to appeal if he believes this Court's denial of his § 2255 motion was wrong. A certificate of appealability is again denied, because Schultz fails to allege facts or claims relevant to the crimes of which he was convicted and, principally, because he fails to make a substantial showing that he was deprived of a constitutional right, 28 U.S.C. § 2253(c)(2).

If Schultz files a notice of appeal within sixty (60) days of the entry of this Order, he may continue his efforts to vacate his conviction by applying to the Court of Appeals for a certificate of appealability.

Accordingly, IT IS HEREBY ORDERED that Schultz's motions to alter or amend the judgment, including his "Offer in Compromise" (docs. 54, 55, 55-1), are DENIED. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Schultz files a Notice of Appeal.

DATED this 26th day of August, 2011.

Richard F. Cebull, Chief Judge
United States District Court